IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01973-RBJ

ROBERT LYNN MCGILL,

    Plaintiff,

v.

JO ANN B. BARNHART, Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING THE DENIAL OF BENEFITS**

    This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying plaintiff Robert Lynn McGill's application for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS the Commissioner's denial of benefits.

**I. STANDARD OF REVIEW**

    A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). To be disabling, a claimant's conditions must be so limiting as to preclude any substantial gainful work for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

    This appeal is based upon the administrative record and the parties' briefs. In reviewing a final SSA decision, the District Court examines the record and determines whether it contains

substantial evidence to support the decision and whether the SSA applied correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The District Court's determination of whether the ruling by the Administrative Law Judge ("ALJ") is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## I.  BACKGROUND

Robert Lynn McGill ("plaintiff") filed a claim for SSI and SSDI benefits on July 5, 2016. ECF No. 14 at 1. In that claim, Mr. McGill alleged that his disability began on December 19, 2014 after he suffered a series of strokes. *Id.* at 38. Mr. McGill had experience working as a limousine driver and as an admissions coordinator at a hospital. *Id.* at 79. He stopped working as a driver in 2014. *Id.* at 63. After his strokes and the ensuing treatment, he began experiencing chronic headaches, vertigo, nausea, and pain. *Id.* Mr. McGill's claim for SSI and SSDI were initially denied at the state agency level. Following this denial, Mr. McGill requested a hearing. *Id.* at 105. An ALJ presided over the hearing and ultimately rendered an unfavorable decision dated March 20, 2019. *Id.* at 17.

Mr. McGill's medical and treatment history is extensive. The record contains hundreds of pages of medical records and opinions from both treating and non-treating sources. Mr. McGill went to the hospital after experiencing several falls due to dizziness. *Id.* at 288. At the

hospital, he was told he had had several strokes and short segment stenosis of several intercranial arteries and diffuse wall thickening of some arteries.  *Id.* at 309.  This diagnosis was made by Dr. Ravi Shah, a neurologist brought in by the emergency room doctors to consult on Mr. McGill's case.  *Id.*  A month after his initial hospital stay, Mr. McGill underwent an angiogram performed by Dr. Theodore Larson.  As a result of the angiogram, Dr. Larson was able to determine the extent of the narrowing of the arteries.  *Id.* at 55.  He also found an arteriovenous (AV) fistula in Mr. McGill's brain.  *Id.*

Following the angiogram, Mr. McGill began experiencing headaches and continued to have dizziness and vertigo.  *Id.* at 344.  In May 2015 Mr. McGill began seeing physician assistant Sarah Smith, supervised by Dr. Shah.  *Id.*  Ms. Smith administered various neurological and physical tests over several visits.  *Id.* at 344–350.  Dr. Shah provided a medical opinion that the ALJ admitted into evidence at Mr. McGill's hearing.  Dr. Shah opined that Mr. McGill "is having residual effects of these strokes, such as vertigo and disequilibrium.  Due to these effects, he has been unable to work."  *Id.* at 95.  Ms. Smith likewise provided an opinion in the form of her answers on a Med 9 form that was admitted into the record.  Ms. Smith indicated that Mr. McGill was disabled for twelve months or longer due to chronic vertigo and dizziness.  *Id.*

Dr. Robert Pratt, a non-examining state agency medical consultant, issued a contrary opinion.  He opined that Mr. McGill could perform light exertional work.  *Id.* at 96.  Dr. Pratt found that Mr. McGill could occasionally lift twenty pounds.  *Id*.  He found that Mr. McGill would be frequently capable of lifting items of ten pounds or fewer.  *Id.*  Dr. Pratt's report indicated that Mr. McGill would be able to stand for six hours of the eight-hour workday.  *Id.*  Dr. Pratt found that Mr. McGill could not use ladders or scaffolds and could not be up high or near any hazards due to his vertigo and dizziness.  *Id.* at 96–97.  Dr. Pratt explained that his

analysis regarding Mr. McGill's physical ability to work differed from Ms. Smith and Dr. Shah's opinions, but that Ms. Smith and Dr. Shah's opinions spoke to an issue reserved to the Commissioner: the ultimate determination of whether Mr. McGill was physically capable of work. *Id*.

The ALJ conducted a hearing in which he admitted the above medical opinions into the record. An impartial vocational expert was also at the hearing. Following the hearing and a review of Mr. McGill's medical record, the ALJ found that Mr. McGill did not have a qualifying disability. In reaching his opinion, he applied the five-step sequential process. At step one, the ALJ found that Mr. McGill had not engaged in substantial gainful activity since December 19, 2014, the alleged onset date. *Id*. at 21. At step two, he found that Mr. McGill had the following severe impairments: headaches; late effect of cardiovascular event accident; dural arteriovenous fistula; occlusion/stenosis vertebral arteries (status post-stroke); and status post-lumbar spine surgery. *Id*. at 23. He noted that these impairments "significantly limit [Mr. McGill's] ability to perform basic work activities." *Id*.

At step three, the ALJ found that Mr. McGill's impairments, viewed singly or together, did not meet or medically equal the severity of one of the impairments listed as a per se qualifying disability. *Id*. at 22. Accordingly, the ALJ proceeded to step four where he found that Mr. McGill had a residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), except that he cannot climb ladders, ropes, and scaffolding. Based on his review of the medical record, the ALJ concluded that Mr. McGill

> [C]an occasionally climb ramps and stairs. He can occasionally balance, stoop, crouch, kneel, and crawl. He can have no exposure to unprotected heights or moving mechanical parts. He can have no exposure to excessive vibration. He can have no more than a moderate noise intensity level. He can have no outdoor work or task specific lighting.

*Id.* at 23. The ALJ also concluded that Mr. McGill had an underlying medically determinable physical impairment that could be reasonably expected to produce his pain or other symptoms. *Id.* at 25.

However, the ALJ did not find Mr. McGill's statements about the intensity, persistence, and limiting effects of those symptoms to be consistent with the medical record. *Id.* The ALJ found Mr. McGill's statements inconsistent because his treating providers indicated that his headaches were intermittent, while Mr. McGill testified that they were constant or near constant. *Id.* Physical examinations from 2014–2017 showed that the strength in his extremities remained intact, his reactions were not changed, he had a normal gait, and his sensation was intact. *Id.* at 25–26. Further, when he visited doctors for physical examinations, he reported that he was receiving relief from his symptoms with his medications, and that he was not experiencing negative side effects of the medications. *Id.* at 26. Mr. McGill's providers did not observe him in the great distress that would be associated with the constant and significant pain that Mr. McGill described. *Id.* at 27. The ALJ concluded that Mr. McGill could perform sedentary work.

In reaching his conclusion, the ALJ reviewed the objective medical evidence and the medical providers' opinions. He also assigned weight to these opinions. He found Dr. Platt's opinion to be persuasive because it was consistent with the record and awarded it significant weight. *Id*. at 26. The ALJ did not find Ms. Smith and Dr. Shah's opinions persuasive; he found that their opinions were not consistent with the record and gave those opinions little weight. *Id.* at 27.

The ALJ determined that Mr. McGill had numerous severe impairments, including headaches, late effect of cardiovascular event accident, and a dural arteriovenous fistula. *Id.* at 20. However, he found that Mr. McGill could perform certain jobs—including the job he had

formerly held at Children's Hospital as an admissions coordinator. *Id.* The vocational expert, considering Mr. McGill's limitations, found that he could perform the job of admissions coordinator in the manner that the job is generally performed. *Id.* As a result, the ALJ found that Mr. McGill did not have a qualifying disability under the Social Security Act. In response to his being denied benefits, plaintiff filed suit in this Court. He now asks this Court to reverse and remand the ALJ's denial of benefits.

### III. ANALYSIS

Plaintiff asserts that the ALJ's determination should be reversed and remanded. Mr. McGill argues that the ALJ erred in that he (1) gave significant weight to a Disability Determination Services (DDS) record that was outdated due to a clerical error; (2) failed to give the evaluations of Dr. Shah and physician assistant Smith appropriate weight; (3) failed to address Mr. McGill's headaches, vertigo, and incontinence; and (4) supported his opinions based on a past job held by Mr. McGill that never constituted substantial gainful activity. I address each argument in turn.

#### A. The ALJ's Reliance on the Disability Determination Services Report

Mr. McGill argues that the ALJ erred by relying on a DDS report that only considered Mr. McGill's claim from the onset of his impairments in December of 2014 to December 31, 2015. It was later determined that the actual relevant period extended through 2017. In making his decision, the ALJ relied in part on the evaluation of Dr. Pratt, who analyzed Mr. McGill's case for the DDS. Mr. McGill claims that any reliance on Dr. Pratt's evaluation was error because Dr. Pratt's analysis was based on an incomplete record.

However, even if the ALJ relied on a report by a state agency doctor who reviewed outdated records, the ALJ did not err as long as he also relied on records that were not outdated.

*See Neal v. Commr., SSA*, 782 F. App'x 722, 725 (10th Cir. 2019) (unpublished).  In addition to Dr. Pratt's evaluation, the ALJ relied on medical reports from December 19, 2014 through as late as March 12, 2018.  *See* ECF No. 14 at 26.  The ALJ did not simply take Dr. Pratt at his word; he analyzed Dr. Pratt's evaluation in light of all other medical evidence when determining Mr. McGill's RFC.

**B. The ALJ's Consideration of Medical Opinions**

    1. The Weight Accorded to the Evaluations by Dr. Shah and Physician Assistant Smith

Plaintiff argues that the ALJ did not give sufficiently specific reasons for assigning little weight to the opinions of Dr. Shah and physician assistant Smith.  ECF No. 18 at 12.  I disagree.  The regulations governing disability determination proceedings state that "[i]f any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."  20 C.F.R. § 404.1520(b).  Furthermore, when an ALJ evaluates the persuasiveness of medical opinions, "[t]he most important factors [he] considers [are] supportability. . . and consistency."  *Id.* § 404.1520(c).  Regarding supportability, the regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be."  *Id.* § 404.1520(c)(1).  The consistency factor is described as follows: "[t]he more consistent a medical opinion[s] or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520(c)(2).

Typically, ALJs need only analyze the supportability and consistency factors when evaluating how much weight to give a medical opinion. An ALJ must "'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting C.F.R. § 404.1527(d)(2)). Additionally, the decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." *Id.* (quoting Social Security Ruling 96-2p, 1996 WL 374188 at *5). If an ALJ decides that a medical opinion is unsupported by medical evidence or inconsistent with the record, that medical opinion is not entitled to controlling weight. *Id.* It still must be assigned some weight because medical opinions are entitled to some deference, even when inconsistent with the rest of the record. *Id.*

Here, Dr. Shah and Ms. Smith opined that Mr. McGill was disabled and would remain disabled for twelve months or longer. ECF No. 14 at 559–660. However, physical and neurological examinations of Mr. McGill between 2014 and 2018 showed that his cranial nerves were intact, he retained strength in his extremities, his reflexes were intact, and his gait and coordination remained normal. ECF No. 14 at 27. Mr. McGill's treating providers wrote in their reports that his headaches were intermittent (not constant as Mr. McGill testified before the ALJ). *Id.* Mr. McGill's providers did not observe him in the great distress that would be associated with the constant and significant pain that Mr. McGill described. *Id.* Mr. McGill also reported he was getting relief from his symptoms from his medication and that he was not experiencing side effects. *Id.*

Mr. McGill argues that this decision is unspecific and does not explain why little weight was given to the opinions.[1] ECF No. 18 at 13. I disagree. The ALJ clearly and specifically outlined his reasons for giving the opinions of Dr. Shah and Ms. Smith little weight. He specified the testimony and evidence that conflicted with the medical opinions of Dr. Shah and Ms. Smith.

Mr. McGill also argues that the ALJ erred by failing to make reasonable effort to recontact Dr. Shah and Ms. Smith for clarification. ALJs must "make every reasonable effort to recontact [treating sources] for clarification when they provide opinions on issues reserved to the Commissioner and the bases of such opinions are not clear to us." Social Security Ruling 96-5P, 1996 WL 374183 at *2–3. However, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight." *Id*. The bases of their opinions are clear from the medical records created by Dr. Shah and Ms. Smith in the course of treating Mr. McGill. The ALJ did not reversibly err by failing to recontact Dr. Shah or Ms. Smith.

2. <u>The ALJ's Failure to Address the Medical Opinions of Drs. Larson, Chae, and Ambrosia</u>

Mr. McGill argues that the ALJ failed to consider the entire record because he did not address medical opinions from Drs. Larson, Chae, and Ambrosia. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ must discuss uncontroverted evidence that he chooses not to rely on and probative evidence he rejects in addition to discussing the evidence that supports her decision. *See id.* at 1010.

---

[1] At several points during his opening brief, Mr. McGill seems to argue that the ALJ rejected the opinions of Dr. Shah and Ms. Smith entirely. *See* ECF No. 18 at 13–14. This position is not supported by the record. The ALJ wrote in his decision he gave those decisions little weight. ECF No. 14 at 27. There is no reason for this Court to believe that the ALJ rejected the medical opinions of Dr. Shah and Ms. Smith entirely.

I find the ALJ did address the opinions from these doctors, even if he did not refer to them by name. In describing Mr. McGill's abilities, the ALJ referenced and cited information from the numerous physical examinations that Mr. McGill underwent in the aftermath of his December 2014 hospitalization. Dr. Larson was the doctor of record for examinations that occurred on June 28, 2016, July 14, 2014, August 16, 2016, and November 9, 2016. *See* ECF No. 14-9 at Ex. 6F. The ALJ cited to and relied on those reports and other reports from Dr. Larson. ECF No. 14 at 25–26. The ALJ also cited to reports from Mr. McGill's visits to Dr. Chae and Dr. Ambrosia. *Id.* at 24; *id.* at 25. The ALJ took the reports of these doctors seriously. He relied on their statements in the reports from Mr. McGill's visits to reach his conclusion that Mr. McGill could only perform sedentary work. The ALJ's decision shows that he did consider all the evidence, including the medical reports from Drs. Larson, Chae, and Ambrosia.

C. **The ALJ's Consideration of Mr. McGill's Headaches, Vertigo, and Dizziness**

Mr. McGill argues that the ALJ erred because he failed to use Mr. McGill's chronic headaches, vertigo, and incontinence in his evaluation of Mr. McGill's RFC evaluation.

1. Headaches and Vertigo

The ALJ considered all the evidence presented on Mr. McGill's headaches and found that Mr. McGill's testimony was not consistent with the record. ECF No. 14 at 25. An ALJ is allowed to consider "the degree to which the evidence, including the objective medical evidence, substantiated plaintiff's subjective reports of pain and functional limitation." *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1045 (D. Colo. 2015).

In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir.1995)). The ALJ

gave specific reasons linked to evidence in the record for his credibility assessment. These included the reports that Mr. McGill's headaches were intermittent rather than constant and reports that Mr. McGill was receiving good relief from his symptoms with his medication. ECF No. 14 at 26. As the ALJ's finding that Mr. McGill could perform sedentary work has support in the record, that finding is entitled to substantial deference. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000). Reversal is not warranted based on this argument.

Further, reversal is not warranted because the ALJ failed to rely on Social Security Ruling 19-4p, which specifically addresses headache disorders. That ruling became effective on August 26, 2019 and the ALJ issued his ruling in Mr. McGill's case March 20, 2019. *See* SSR 12-4p, 2019 WL 4169635 (S.S.A. Aug. 26, 2019); ECF No. 14 at 16. The ALJ did not err in failing to comport with a ruling that had not yet been made.

2. Incontinence

Mr. McGill also argues that the ALJ committed reversible error by failing to account for his incontinence in evaluating his RFC. It is true that the ALJ's decision did not mention Mr. McGill's incontinence. However, there were no mentions of his incontinence in any medical report. In fact, in several medical reports, Mr. McGill denied bladder and bowel incontinence— his providers noted that he had no genitourinary (incontinence) complaints on November 9, 2016. December 14, 2016, and March 8, 2017. ECF No. 14 at 715, 724, 735. The only evidence of Mr. McGill's incontinence problem was his own testimony, even though the ALJ reviewed medical reports from as late as March 2018. As a result, Mr. McGill's allegations of incontinence cannot be "reasonably accepted as consistent with the objective medical evidence and other evidence," and the ALJ need not take those allegations into account. 20 C.F.R. §404.1529(c)(3). The ALJ did not err by failing to consider Mr. McGill's allegations of incontinence in evaluating his RFP.

      3.  <u>Consideration of the Combination of Mr. McGill's Impairments</u>

Mr. McGill next argues that the ALJ failed to consider his headaches, vertigo, and incontinence in combination. He states that the ALJ was required to consider his impairments in combination to consider whether they met the standard of a listing. SSR 17-2p, 2017 WL 3928306 (S.S.A. Mar. 27, 2017). Where a claimant asserts that her impairments in combination equal a listing, she must support that issue with argument. *Wall v. Astrue*, 561 F.3d 1048, 1064 (10th Cir. 2009). Mr. McGill did not state which listing his impairments in combination would meet. He did not sufficiently support his assertion with argument. Further, the ALJ stated that he had considered the whole record and that Mr. McGill did not have "an impairment or combination of impairments that met or medically equaled a listing." ECF No. 14 at 23. Generally, if a lower tribunal has asserted that it considered an issue, the Court takes that assertion as true. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). I find no reason not to do so here.

  **D.**  <u>**Mr. McGill's Past Employment as an Admissions Coordinator**</u>

Mr. McGill claims the ALJ erred because in no year that he worked as an admissions coordinator did he reach the level of monthly compensation delineated by the Social Security Administration as substantial gainful employment.[2] As a result, he asserts that the ALJ's finding that he had past sedentary work experience at the level of substantial gainful employment was based on a clerical error.

However, Mr. McGill's characterization of his earnings from 2002–2004 is incorrect. Mr. McGill cited to deferred earnings in 2002–2005 and 2010–2011. ECF No. 18 at 19.

---

[2] In 2002, the SSA required compensation of $780/month to qualify as substantial gainful employment. In 2003, it required $800/month. In 2004, it required $810/month. In 2005, it required $830/month. In 2010 and 2011, it required $1,000/month.

However, Mr. McGill's earnings records show that his employment as an admissions coordinator did rise to the level of substantial gainful employment. In 2002, Mr. McGill earned $18,789.93 from Children's Hospital. ECF No. 14 at 196. In 2003, he earned $32,285.48. *Id.* In 2004, he earned $31,057.26. *Id.* at 197. These amounts exceed the monthly amounts required to reach the level of substantial gainful employment for each year in which they were earned. The ALJ did not err in finding that Mr. McGill had past substantial gainful employment as an admissions coordinator.

## ORDER

For the reasons discussed above, the Court AFFIRMS the Commissioner's decision denying Mr. McGill's's application (ECF No. 18) for SSI and SSDI benefits.

DATED this 15th day of November, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge